[7 NYS3d 849]

In the Matter of I.R., a Child Alleged to be Neglected. N.R. et al., Respondents.

Family Court, Kings County, February 9, 2015

**APPEARANCES OF COUNSEL**

*Zachary W. Carter, Corporation Counsel*, Brooklyn (*Elaine Ku* of counsel), for petitioner.

*Lance Kramer*, Brooklyn, for mother, respondent.

*Frank A. Buono*, Brooklyn, for father, respondent.

*Fred A. Wertheimer*, Brooklyn, for stepgrandmother, respondent.

*Brooklyn Defender Services*, Brooklyn (*Laura Matthews-Jolly* of counsel), for grandmother, respondent.

*Legal Aid Society*, Brooklyn (*Laura Paley* of counsel), Attorney for the Child.

### OPINION OF THE COURT

ANN E. O'SHEA, J.

The Administration for Children's Services (ACS) alleges in its petition that the subject child (date of birth xx/xx/14) sustained four leg fractures that would ordinarily not be sustained except as a result of acts or omissions of the mother, the father, the maternal grandparent, and/or her partner (the stepgrandmother), each of whom had responsibility to one degree or another for the care of the child. Respondents all denied doing anything to injure the child. The child was removed from the parents' care and placed in foster care with the St. Christopher-Ottilie Child and Family Services foster care agency in May 2014.

A pre- fact-finding service plan was developed for each of the respondents. At a permanency planning hearing held on February 2 and 9, 2015 the agency submitted two reports indicating that all the respondents, except the father, have completed all the requested services. Based on the reports, the mother requested that she be permitted unsupervised visits with the child. The Attorney for the Child does not object to unsupervised visits between the mother and the child.

In its report, dated February 2, 2015, the agency related the report and recommendations of Families In Recovery, the parenting skills program provider to which the mother had been referred. The report is from Kristine A. Komada, Ph.D., a Families In Recovery psychologist:

> "On the basis of almost 8 months of weekly contact with Ms. [R.] [the mother] in class and observing her interaction with her daughter on two occasions, she has done nothing to raise concerns about her daughter's safety or present any risks. . . . Therapeutically, Ms. [R.] has benefitted from this class . . . she has become more in touch with her feel-

ings and better able to express herself. She recognizes her strengths and has more self confidence. She is able to withstand stressful situations and respond appropriately. Ms. [R.] shows her maturity in a number of ways, such as good attendance, positive interactions in stressful group situations with peers and shows a lot of personal insight. She has used this crisis as a way to mature personally. On the basis of these experiences with Ms. [R.], it is recommended that she be able to have unsupervised visits with her daughter. Overnight visits can also be considered in the nearest future."

Despite the Families In Recovery report and recommendation, ACS objects to the mother being permitted unsupervised visits, arguing only that the child suffered serious, unexplained injuries and, in these circumstances, such visits should not be permitted prior to fact-finding.

During the pendency of an abuse or neglect proceeding, a respondent whose child is in the care and custody of ACS shall "have the right to reasonable and regularly scheduled visitation" (Family Ct Act § 1030 [a]) with the child and shall "be granted reasonable and regularly scheduled visitation unless the court finds that the child's life or health would be endangered thereby" (Family Ct Act § 1030 [c]; *see Matter of Nyla W. [Nora A.]*, 105 AD3d 861 [2d Dept 2013]; *Matter of Nyasia J.*, 41 AD3d 478, 479 [2d Dept 2007]). The foster care agency in charge of supervising the child is required to provide "suitable arrangements for the parents to visit the child" (Social Services Law § 384-b [7] [f] [2]). "Suitable arrangements" pertain not only to the physical space for visits, but also the nature, duration, and quality of the visits (*see e.g. Matter of Fish v Fish*, 112 AD3d 1161, 1162 [3d Dept 2013]; *see also Matter of Robert F.*, 195 AD2d 715 [3d Dept 1993]). ACS's policy guidelines for Determining the Appropriate Level of Supervision Needed During Visits for Families with Children in Foster Care* (guidelines) require foster care agencies to implement *unsupervised* visits "unless visitation poses a risk to the physical and/or emotional safety of the chid; there is reason to believe that the parent may attempt to interfere with, manipulate or coerce the child's potential testimony; or there is a court order requiring a higher level of supervision" (guidelines at 4). The guidelines

---

* http://www.nyc.gov/html/acs/downloads/providers_newsletter/july25/ACS%20Visitation%20Policy%20July%2017,2012.pdf.

also require that "[p]arents with children in care should not remain in supervised visits when no safety issues require supervision" (guidelines at 7).

The fact that this is a res ipsa case, which has not yet gone to fact-finding, is not a basis to deny the mother unsupervised visits (*see Matter of Matthew W. [Mei Qi B.]*, 125 AD3d 677 [2d Dept 2015] [upholding Family Court's order granting parents, who were compliant with their service plan, pre- fact-finding unsupervised, overnight visits and directing the agency to thereafter temporarily release the children to the parents' custody in the absence of good cause]; *Matter of Nyla W. [Nora A.]*, 105 AD3d 861 [2d Dept 2013] [after a partial hearing under Family Ct Act § 1028 and before fact-finding, Family Court providently exercised its discretion in awarding the mother up to four hours of unsupervised visitation three times per week]; *compare Matter of Bree W. [Jennifer F.]*, 98 AD3d 522 [2d Dept 2012] [the safer course was to deny unsupervised visits until conclusion of a full fact-finding hearing], *with Nicholson v Scoppetta*, 3 NY3d 357, 380 [2004] [in considering whether to remove a child, a default to a "safer course . . . should not be used to mask a dearth of evidence or as a watered-down, impermissible presumption"]).

The question presently before the court in this case is not whether the mother did something in the past to cause the child's injuries; that will be determined at a fact-finding hearing. Rather, the question is whether permitting the mother and child to have unsupervised visits now will expose the child to a risk of harm. As with many issues confronting Family Court, the question requires a prediction, which, by its nature, can never be certain. Nonetheless, the court must make its predictive determination based upon the evidence presented.

Here, the agency's own evidence, submitted at the permanency planning hearing, establishes that the mother has completed her service plan, visits the child consistently, has profited from her services, and is completely appropriate with the child. Most compelling, the organization to which the agency referred the mother for a parenting skills program and individual counseling recommends that the mother be permitted unsupervised visits—even overnight visits. That is the only evidence that the agency has provided with respect to the question of whether the mother should be permitted unsupervised visits. There is nothing else before the court, and there is nothing to contradict those recommendations.

It should also be noted that, although fact-finding was scheduled to begin on March 2, 2015, it must be adjourned because ACS has not yet obtained or provided respondents or the Attorney for the Child with crucial hospital records or even a definitive witness list—including the experts it intends to call along with the information required by CPLR 3101 (d). To deny the mother—and the child—unsupervised visits until after fact-finding when fact-finding will be delayed for months because ACS has not gotten its evidence and witnesses together is not acceptable.

The evidence, the statute, the case law, and ACS's guidelines all support, if not require, the court to order that the mother be permitted unsupervised visits. Therefore, the mother's application for unsupervised visits is granted over ACS's objection. The mother and the foster parents shall schedule the visits as frequently as they can.